UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JON CRAWN,

                          Plaintiff,

       -against-

TOWN OF WALLKILL,

                         Defendant.
------------------------------------------------------------------x

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

07 Civ. 1032 (GAY)

      Defendant Town of Wallkill, by its attorneys, Sokoloff Stern LLP, hereby submits the following statement, pursuant to Local Rule 56.1, of which it claims there are no genuine issues of material facts to be tried.

      1.     Plaintiff is a 47 year old man, whose left leg was amputated in 1984. [Exh. A, ¶ 7.]

      2.     On December 28, 2006, plaintiff appeared at the Town of Wallkill municipal offices, located at 111 Tower Drive ("Building B") in order to resolve a parking ticket. [Exh. A, ¶ 9.]

      3.     Plaintiff was not the registered owner of the vehicle which had been ticketed. The parking ticket was issued to a vehicle owned by a woman named Erin Luckey. [Exhs. C, D; E at pp. 22, 24; F at p. 17.]

      4.     The parking ticket was issued to Erin Luckey on December 18, 2006. [Exhs. C, D; E at pp. 22, 24; F at p. 17.]

      5.     In December 2006, Susan DiFrenza was employed as the Town of Wallkill parking enforcement bureau clerk. [Exh. F at p. 6.]

      6.     The position was part-time, because it was not a busy office and "it didn't warrant full-time hours." [Exh. F at p. 6.]

7. Most of Ms. DiFrenza's work was done through the mail, as most people would respond to a summons by mail. [Exh. F at p. 6.]

8. In December 2006, Ms. DiFrenza also held a part-time position in the Town tax assessor's office. [Exh. F at pp. 5-6.]

9. The tax assessor's office is located at 99 Tower Drive (hereinafter "Building A.") [Exh. F at pp. 5-6.]

10. Plaintiff estimated that the distance between the two buildings is 100 yards. [Exh. E at p. 69.]

11. Plaintiff estimated that the driving distance between Building A and Building B is approximately 200 yards. [Exh. E at p. 69.]

12. There are handicapped accessible parking spaces directly in front of both buildings. [Exh. E at pp. 41, 47; Dehaan Aff.]

13. There are curb cuts in the parking lot to allow for wheelchair access. [Exh. E at pp. 41, 47; Dehaan Aff.]

14. On December 28, 2008, plaintiff drove himself to Building B and parked his vehicle in a handicapped accessible parking space. [Exh. E at p. 47.]

15. Upon his arrival at Building B, plaintiff was initially directed to the Assessor's building ("Building A," located at 99 Tower Drive), where the parking enforcement clerk was temporarily situated. [Exh. A, ¶10.]

16. When he arrived at Building B, plaintiff was ambulating with the aid of a crutch. [Exh. A, ¶9].

17. Plaintiff walked into Building B. [Exh. E at p. 47.]

18. Plaintiff spoke with an unidentified employee of the Court Clerk's office. [Exh. E at p. 51.]

19. The employee at the Court Clerk's office agreed to page Ms. DiFrenza to see if she could come to Building B to assist plaintiff. [Exh. E at pp. 65, 67.]

20. The employee at the Court Clerk's office made several attempts to locate Ms. DiFrenza, even going so far as to request assistance from the Town police department. [Exh. E at p. 67.]

21. Ms. DiFrenza arrived at Building B to assist plaintiff approximately thirty (30) minutes after she was paged. [Exh. A, Exh. E at pp. 70-71.]

22. Plaintiff claims that he waited for Ms. DiFrenza in Building B for approximately forty-five (45) minutes in total. [Exh. A, Exh. E at pp. 70-71.]

23. Plaintiff did not ask if there was anywhere within the building where he could sit and wait for Ms. DiFrenza. [Exh. E at p. 71, 79.]

24. Plaintiff claim that he asked the Court Clerk for a chair, but that she appeared "flustered" as if it was "a question she didn't expect." [Exh. E at pp. 71, 75.]

25. The parking bureau service counter shares a common hallway with the courtroom. [Exh. E at p. 75; Exh. F at p. 13; Exh. G at pp. 10, 12; Exh H at pp. 16-17; Dehaan Aff.]

26. The courtroom is located within 28 feet of the parking bureau service counter. [Exh. E at p. 75; Dehaan Aff.]

27. There are more than eighty (80) chairs in the courtroom. [Dehaan Aff.]

28. These chairs are plainly visible from the hallway through the windows of the courtroom doors. [Dehaan Aff.]

29. The courtroom doors do not lock. [Exh. F at p. 13; Exh. G at pp. 10, 12; Exh H at pp. 16-17; Dehaan Aff.]

30. All patrons conducting business at the municipal building are welcome to enter the courtroom and sit down. [Exh. F at p. 13; Exh. G at pp. 10, 12; Exh H at pp. 16-17; Exh I at p. 10.]

31. While plaintiff claims that he was unable to open the courtroom door, he admits that he neither attempted to push or pull the door open. [Exh. E at pp. 76-77.]

32. Rather, he claims that he assumed the door was locked when he was unable to turn the door knob. [Exh. E at pp. 76-77.]

33. As demonstrated by the photographs annexed hereto as Exhibit J, the courtroom door does not have door knobs. [Exh. J.]

34. Plaintiff did not ask anyone if it would be possible to sit and wait in the courtroom [Exh. E at p. 79.]

35. When Ms. DiFrenza arrived she took copies of the ticket and plaintiff's handicapped parking permit. [Exh. F at p. 12.]

36. The ticket was dismissed that day. [Exh E at p. 94.]

37. Both Ms. DiFrenza and the court personnel apologized to plaintiff for the wait. [Exh. E at p. 90.]

38. Both Building A and Building B are fully-compliant with the New York State and Federal regulations regarding handicapped accessibility. [Dehaan Aff.]

39. In fact, the design of both buildings follows the guidelines established by the International Code Counsel and the American National Code Standard Institute, known as the ICC/ANSI A 117.1 (1998). [Dehaan Aff.]

40. The ICC/ANSI A117.1 Accessible and Usable Buildings and Facilities is a nationally-recognized standard of technical requirements for making buildings accessible, which has been adopted by New York State. [Dehaan Aff.]

41. Neither the ADAAG nor the ICC/ANSI A117.1 guidelines require seating to be provided at a service counter window or in a hallway. [Dehaan Aff.]

42. Plaintiff does not contest that Building B is handicapped accessible. [Exh. A; Exh E at pp. 47, 107-108, 112.]

43. In fact, plaintiff testified that he contacted the New York State Advocate for the Disabled and was advised that Building B is handicapped accessible. [Exh E. at pp 107-108, 112.]

44. Plaintiff's claim asserts only that he was not provided "a chair or other means to accommodate his disability in the hallway as he awaited the return of the parking enforcement officer." As a result, he claims he was subjected to "discomfort and awkwardness." [Exh. A, ¶12.]

45. Nevertheless, plaintiff readily acknowledges that he has had to stand in line in the normal course of conducting various activities of daily living, such as purchasing groceries, even when he does not have the benefit of his prosthetic leg or wheelchair. [Exh E at pp. 15, 156.]

46. In fact, plaintiff candidly admits "I don't believe I was denied access to the window because of my disability." [Exh. E at p. 99.]

47. Rather, plaintiff believes he was denied access to the parking enforcement bureau, because of the fact that parking enforcement office was not open for business and the clerk was not present when he arrived. [Exh E at pp. 98-99.]

48. He admits that this "denial" of service is not related to his disability. [Exh E at pp. 98-99.]

49. By Decision and Order dated December 5, 2008, the Honorable Stephen C. Robinson dismissed that portion of plaintiff's complaint which sought injunctive relief. [Exh. M.]

DATED: Westbury, New York
        October 26, 2011

                              SOKOLOFF STERN LLP
                              Attorneys for Defendant
                              TOWN OF WALLKILL

By: _____
                              STEVEN C. STERN
                              KIERA J. MEEHAN
                              355 Post Avenue, Suite 201
                              Westbury, New York 11590
                              (516) 334-4500
                              Our File No.: 080017

TO: Bergstein & Ullrich, LLP
      15 Railroad Avenue
      Chester, NY 10918